Beckwith, Ch. J.
The plaintiffs claim that there are two grounds upon which they have a right to recover, namely: That they “were the procuring cause of the identical contract for the sale" of the premises, which was finally concluded, and that they in fact procured parties to purchase the property for the sum of $16,000.
With respect to the offer which the plaintiffs obtained from Schorr and Loepere, it is enough to say that it was secured after Mr. Holt had disposed of the land, and was too late, unless it appear that the property was withdrawn from them fraudulently, or without authority; but neither *260 fraud nor want of authority can be conclusively shown from the evidence.
In one sense it might appear that the acts and efforts of Slater, one of the plaintiffs, were the procuring cause of the sale, that is to say, he called the attention of Cowles, Hellriegel and Box to the price of land and to the advantages and profits to be had from the purchase. It appears that after he had talked with Mr. Hellriegel,, that gentleman called the matter to the attention of Mr. Box, and told Mr. Box to look into it, and if he thought well of the project to buy the land, and he would take an interest in it. It appears that Mr. Box thought of the matter, that he talked with Mr. Sweet about it, and that Mr. Sweet expressed a willingness to take an interest if Mr. Box wanted an interest in it, but he wanted his friend Curtiss to be brought in for a share. Mr. Cowles did not individually at any time agree with Mr. Slater to take the land, but he finally became one of the five purchasers, making his negotiations for a share with Mr. Box, as did Mr. Hellriegel. It thus appears that Mr. Slater had got the train of events pretty well in motion which led to the purchase by the gentlemen associated under the management of Mr. Box. Neither Mr. Box, Mr. Cowles, nor Mr. Hellriegel, individually, had expressed to the plaintiffs a readiness or willingness to take the land, nor- is there anything to indicate that either one of them, individually, would at any time have become a -purchaser. Only to such a degree of prospective success had the plaintiffs carried their undertaking when their agency to sell at $11,000 was revoked. They had produced no party able and ready to take the lands at the price. It does not appear that at any time the land could have been sold to any individual member of “the combination,” or to any number of them less than the whole, and the sale to the associates was brought about by Mr. Box; and, as the evidence tends to show, under the ultimate inducement of- the commissions offered by Mr. Holt, although he had before that time considered the subject of buying the land, and Sweet and Hellriegel had expressed a willingness to take a share in the purchase if he should think it advisable to buy. The previous conference with Hellriegel, who had been brought in the way by Slater, and the prior interviews with Sweet, which he had been led to by Slater, or Slater’s customer, Cowles, undoubtedly made it comparatively easy for Mr. Box to bring about the association of gentlemen ready to purchase. But it does not appear that Mr. Box, upon whose judgment Mr. Hellriegel and Mr. Sweet proposed to rely, had at any time before he was approached by Mr. Holt with his offer made up his mind that it was worth while to buy the land.
*261 Indeed, the evidence rather tends to show that he was indifferent about it. The indifference or unreadiness of Hellriegel, Cowles and Box individually in their interviews with Slater makes it probable that he could not have effected a sale to them, even if the agency of the plaintiffs had continued. Holt was not bound to wait indefinitely upon the uncertainty of Slater’s efforts. He had the right to revoke the agency if it was not intended, and did not have the effect, to deprive them of the fruits of their labor. It does not appear that his revocation of the plaintiffs’ authority was in law or in fact fraudulent. It does not appear that they had got anyone to the point of buying, or that there was a moral certainty that anyone of the persons with whom they were negotiating would finally enter into a contract of purchase; therefore the terminating of their agency did not deprive them of anything they had acquired. Even if we should think that Holt fancied that he could effect a sale to Box, and that he might by such means avoid the payment of commissions, yet it was uncertain that he could effect a sale; there was no one standing ready to buy; and whatever might be thought of the propriety or fairness of his conduct in taking the property away from the agents, when they had informed him that they had parties in view whom they hoped to bring to an acceptance of the offer, yet he could not be chargeable with a legal fraud. Besides the evidence shows that the plaintiffs had had the property in their hands for quite a long period of -time, and the testimony on the defendants’ part tends to show that their agency was not abruptly or arbitrarily terminated.
Under the authority of the case of Sibbald v. Bethlehem Iron Co. (83 N. Y., 378), we must hold that the plaintiffs did not carry their undertaking to a point where they could clain commissions. That case settles the law on this subject upon clear boundaries. It is useless to discuss the principles here. The facts of this case can only give example of their application. A broker’s board stuck up on the property, or an advertisement, though giving the first notice that a lot of land is for sale, will not make it certain that a broker has claim to commissions. Extreme exertions to sell, made even with the persons who finally conclude a purchase from the owner, may fail to secure the agent any compensation. On the other hand, the simplest act, as the mere act of putting a notice on the property, or placing the lot of land in an advertised list, may entitle the land broker to his commissions. The question whether the broker is entitled to commissions turns on the inquiry whether the things he has done, while his agency con *262 tinues, have brought forth a party able, willing and ready to accept the owner’s offer of sale.
In this appeal it is impossible to say that the efforts of the plaintiffs would, directly or indirectly, have ever procured such a purchaser. That they spent money, time and labor, and almost got a purchaser, entitles them to no compensation whatever from the owner.
The consequence is that the judgment must be affirmed, both upon the law and the facts, with costs.